UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MORGAN REVEREND JEROME STRONG,<br><br>Plaintiff,<br><br>vs.<br><br>MORGAN STANLEY DEAN WITTER,<br><br>Defendant. | Case No: C 08-5209 SBA<br><br>**ORDER**<br><br>[Docket No. 24] |

Presently before the Court is Defendant Morgan Stanley & Co. Incorporated's ("Morgan Stanley" or "Defendant") Motion for Summary Judgment or in the Alternative Summary Adjudication. Having reviewed the papers submitted, considered the arguments of counsel, and being fully informed, the Court GRANTS Defendant's Motion for Summary Judgment on all claims.[1]

## I. BACKGROUND

This is a Title VII/FEHA sexual harassment and racial discrimination case brought by Reverend Jerome Strong ("Rev. Strong" or "Plaintiff"), an African-American man appearing pro per, against his previous employer, Morgan Stanley. On March 26, 2007, Rev. Strong was hired by Christopher Weng ("Weng") to work as a Financial Advisor Trainee in Defendant's Oakland office as part of Defendant's Reach for Excellence Training Program. (Mot. at 3:6-7.) Weng, who is also African-American, remained Plaintiff's supervisor in Oakland for the duration of Plaintiff's employment. Rev. Stong was terminated on November 30, 2007. (Id.) After he was fired,

---
[1] The Court finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

Plaintiff filed the instant suit alleging Weng sexually harassed him and that Defendant terminated him based on his race. (Opp. at 2 ¶ 4.)

Plaintiff's sexual harassment claims encompass approximately fifteen interactions with Weng. Plaintiff claims that on five or six occasions when he and Weng were alone, Weng stated with clear sexual innuendo, "nice pants." (Opp. at 2 ¶ 4.) On one occasion, Weng allegedly asked Plaintiff to stand up and show his profile. When Plaintiff complied, Weng allegedly gave him a 'thumbs up' gesture. (Id.) On three to four other occasions, Weng allegedly told Plaintiff that he was "looking good," with clear sexual innuendo. (Id.) Finally, Plaintiff claims that on three or four occasions Weng told him to "pull up his pants in the back." (Id.) Weng states he has no recollection of making such comments and that he does not recall giving Plaintiff a "thumbs up" signal, but that he may have complimented Plaintiff when he appeared to make an effort with regard to his appearance. (Weng Decl. ¶ 17.)

Plaintiff also alleges that he was fired because of his race. Defendant asserts that the Reach for Excellence Training Program is a structured program with production requirements, and that trainees must meet those requirements to remain in the program. (Weng Decl. ¶¶ 4, 8.) As Defendant's 2007 fiscal year was closing in November, regional managers were instructed to fire those trainees that were not meeting their production targets. (Weng Decl. ¶ 10.) Plaintiff admits that he failed to meet these targets. (Strong Depo. at 112:11-14 (at Declaration of Amria Day, Ex. A) ("Strong Depo."); Weng Decl. ¶¶ 4, 9.) Defendant claims that Plaintiff missed the required targets by a large margin. (Weng Decl. ¶ 9.)

Based on his supervisor's instructions, Weng states he fired his two under-performing trainees: Plaintiff and another trainee, Tom Lee, who is allegedly of Korean origin. (Mot. at 4:15-16; Opp. at 3 ¶ 7.) Weng gave Plaintiff and Mr. Lee the option of either resigning or being terminated. (Strong Depo. 133:20-134:9; Mot. at 4:18-21.) Plaintiff chose to be terminated with

the understanding he would receive unemployment benefits. (Id.) Plaintiff claims that after he was fired he had lunch with Weng, and that Weng told Plaintiff that he had to fire him or else it would look like racial favoritism towards the Plaintiff and discrimination against Mr. Lee since both were under-performing. (Opp. at 3 ¶ 7.) As a result of this alleged comment by Weng, Plaintiff concluded that he was fired based on his race.

Plaintiff did not report any of the above sexual harassment allegations to Defendant during his employment. (Strong Depo. at 168:3-6.) Plaintiff first reported his claims of discrimination and harassment to Morgan Stanley in October 2008, nearly eleven months after his termination. (Strong Depo. at 173:24-174:6.) Morgan Stanley investigated the claims and found no evidence to substantiate Plaintiff's claims. (Declaration of Wendy Warner ("Warner Decl.") ¶¶ 6-9, Ex. C.) Plaintiff filed the instant pro se complaint on November 18, 2008, alleging racial discrimination and harassment under Title VII of the Civil Rights Act and § 12900, et seq., of California's Fair Employment and Housing Act ("FEHA"). (Docket No. 1.)

On October 7, 2009, Defendant submitted the instant motion for summary judgment or, in the alternative, summary adjudication ("Motion"). (Docket No. 24.) On October 13, 2009, Plaintiff submitted an opposition to Defendant's motion. (Docket No. 31.) On December 1, 2009, Defendant filed a reply to Plaintiff's opposition. (Docket No. 33.)

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is a genuine issue of material fact when there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmoving party. See Id. Where a party fails to make a showing sufficient to establish the

existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, summary judgment is mandated. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

On a motion for summary judgment, a judge must view the evidence presented in the light most favorable to the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The movant bears the burden of identifying those portions of the pleadings, discovery, and affidavits, which show that there is no genuine issue of material fact. See Celotex, 477 U.S. at 323. When the movant has the burden of proof on an issue at trial, there must be sufficient evidence to show that no reasonable trier of fact could find for the nonmoving party. Id. However, when the movant does not bear the burden of proof on an issue at trial, all that is required is a showing "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the movant meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial," and identify evidence that precludes summary judgment. Fed. R. Civ. P. 56(e), Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). If the nonmoving party fails to do so, the district court may grant the summary judgment motion in favor of the moving party. Id.

A district court maintains discretion to consider materials in the court file not referenced by any opposing party. Id. However, it may only consider admissible evidence when ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr, 285 F.3d at 773. If the parties do not plead such evidence, it is not the duty of the district court to scour the record for a triable issue of fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).

///

///

///

**III.     DISCUSSION**

Plaintiff brings a racial discrimination and a sexual harassment claim under Title VII and California's FEHA. FEHA mirrors the federal Title VII law, and thus the same analysis is appropriate for both federal and state claims. See Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996); Reno v. Baird, 18 Cal.4th 640, 647 (1998).

**A.     RACE DISCRIMINATION**

To establish a prima facie case of race discrimination a plaintiff must show that he (1) is in a protected category; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and, (4) that similarly situated individuals were treated differently. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Failure to establish any essential element of a case is grounds for summary judgment. Celotex, 477 U.S. at 322. Because the Plaintiff bears the burden of establishing a prima facie case, Defendant need only show that there is "an absence of evidence to support [Plaintiff's prima facie] case." Celotex, 477 U.S. at 323.

If a plaintiff is able to demonstrate a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. McDonnell Douglas, 411 U.S. at 802. If the defendant meets this burden, the plaintiff in a Title VII/FEHA case may use additional evidence to demonstrate that the defendant's proffered reason is a pretext for the unlawful discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Rev. Strong alleges he was terminated because of his race, a protected class. He also suffered an adverse employment action in being terminated. However, Plaintiff fails to make out a prima facie case because (1) he has not shown satisfactory job performance, (2) he has not shown that similarly situated employees were treated differently, and (3) he fails to rebut Defendant's legitimate business reason for his termination.

1. *Job Performance*

Plaintiff bases his racial discrimination claim solely on the conversation that he had with Weng over lunch, wherein Weng allegedly stated that he fired Plaintiff because if he did not do so, it would appear that he was discriminating against Mr. Lee and showing racial favoritism towards Plaintiff. (Opp. at 3 ¶ 7.) Plaintiff makes no argument in his complaint, his deposition, or his opposition papers disputing that his job performance was unsatisfactory. Defendant, however, submitted excerpts of Plaintiff's deposition and Weng's declaration, which revealed that Plaintiff admitted to performing below his production targets, and that he knew that his inability to meet those targets could result in his termination. (Strong Depo. at 112:11-14, 116:6-117:7; Weng Decl. ¶ 8.) Plaintiff thus fails to raise a genuine issue of fact regarding his job performance, which is required to make a prima facie case for discrimination.

2. *Similarly Situated Individuals*

Plaintiff does not allege that Defendant treated him differently than others similarly situated. As noted, Plaintiff relies solely on his lunchtime conversation with Weng as evidence of racial discrimination. Defendant, however, presents the excerpt of Plaintiff's deposition, which shows that Plaintiff believed that he was in fact treated the same as Mr. Lee. (Strong Depo. 142:23-143:25, 150:19-23, 151:9-11.) Defendant also shows that Plaintiff admitted that he knew of no other under-performing trainee that Defendant retained, as opposed to fired. (Strong Depo. 150:5-8.) Furthermore, Defendant notes that Weng did not have discretion to fire Plaintiff or Mr. Lee, and that Defendant Morgan Stanley treated each of its under-performing trainees the same. (Weng Decl. ¶ 10 ("As Morgan Stanley's fiscal year was drawing to a close, I and other Morgan Stanley Complex Managers in my branch's district were told by our superiors to terminate, by the end of that month, any FRE Program trainees in our branches who had not met their most recent production targets."))

Because Plaintiff presents no evidence to the contrary, nor does he name any other similarly situated individual who was not fired, he fails to establish that similarly situated employees were treated differently, which is also required to make a prima facie case for discrimination.

### 3. *Legitimate, Non-Discriminatory Motive*

Even if Plaintiff had established a prima facie case of discrimination, which he has not, Defendant has articulated a legitimate, non-discriminatory reason for his firing. Through submission of excerpts of Plaintiff's deposition and the Weng declaration, Defendant shows that Rev. Strong admitted to not meeting his production targets, he knew that his inability to do so could lead to his termination, and he discussed this possibility with Mr. Weng several times. (Strong Depo. at 112:11-14, 116:6-117:7, Weng Decl. ¶ 8.) To meet the minimum requirement of satisfactory performance, trainees need $4,500 in revenue and $600,000 in assets and liabilities; Plaintiff had $688 of revenue and $74,610 in assets and liabilities. (Weng Decl. ¶ 9.) Furthermore, as noted above, Mr. Weng had no discretion in firing the trainees, the decision was that of his superiors in Morgan Stanley. (Weng Decl. ¶ 10.)

Where Defendant presents a valid business reason to rebut the claim, Plaintiff must provide additional evidence that the business decision was actually a pretext to discrimination. Burdine, 450 U.S. at 256. Evidence to show pretext must be both specific and substantial in order to overcome the articulated legitimate reasons put forth by the employer. See Cornwall v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 (9th Cir. 2006). Plaintiff has presented no facts or additional evidence in his opposition that could lead the Court to infer discriminatory pretext on the part of the Defendant. Consequently, even if Plaintiff had make out a prima facie case for discrimination, Plaintiff's fails to rebut Defendant's valid reason for his firing.

///

///

**B. SEXUAL HARASSMENT**

Plaintiff also claims that he was sexually harassed by Weng at work.[2] Sexual harassment constitutes unlawful discrimination under Title VII and FEHA. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). To establish a prima facie sexual harassment claim for hostile work environment under Title VII, a plaintiff must prove that: (1) the defendant subjected him or her to unwelcome comments or conduct, (2) that the alleged harassment was based on a protected status, and (3) that the harassment was severe or pervasive enough to alter the conditions of employment, and create an abusive working environment. Id. Failure to establish any essential element of a claim is grounds for summary judgment. See Celotex 477 U.S. at 322. Because Plaintiff bears the burden of proof at trial to establish his claim, Defendant need only show, "that there is an absence of evidence to support the nonmoving party's case." Id., at 323.

As noted above, Plaintiff contends that on approximately fifteen occasions when he was alone with Weng, that Weng either made remarks regarding his pants specifically, or his appearance in general. Plaintiff, however, fails to establish that the harassment (1) was based on a protected status, his sex, or (2) that it was sufficiently severe or pervasive to alter the conditions of his employment.

1. *Protected Class*

"Sex discrimination consisting of same-sex sexual harassment is actionable under Title VII[.]" Onacle v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82 (1998). To prevail on this claim, Plaintiff is "required to prove that any harassment [that] took place [was] 'because of sex.' "

---

[2] Plaintiff's complaint pleads racial harassment. (Docket No. 1.) However, in liberally construing Plaintiff's complaint, *see* Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir.1988), it appears he is asserting a claim for sexual harassment based on the alleged conduct of Mr. Weng. (Compl. ¶ 6) ("Rev. Strong had frequent business meetings with Mr. Weng during the course of his duties. Beginning April 2007 a number of incidents occurred which were clearly inappropriate and more importantly constituted unlawful harassment on the part of Mr. Weng against Rev. Strong.") Plaintiff stated on several occasions that he believes that Mr. Weng harassed him based on his sex and all of his allegations state that Weng's comments were made with "clear sexual innuendo." (Strong Depo. at 159:20-161:23; 166:4-7.) In its motion, Defendant addresses Plaintiff's complaint as if it attempts to assert a claim for sexual harassment although sexual harassment is not specifically pled. (Mot. at 12:10-13.)

- 8 -

Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 872 (9th Cir. 2001) (quoting Oncale, 523 U.S. at 79). In Onacle, the United States Supreme Court described three circumstances in which a court can infer that the alleged conduct of a purported harasser against someone of the harasser's sex is "because of sex." Onacle, 523 U.S. at 80-81. First, when proposals to engage in sexual activity are made by the harasser and "there [is] credible evidence that the harasser [is] homosexual." Id., at 80. Second, when the victim is treated in a manner that suggests hostility toward people of the victim's sex. Id. Third, when the alleged harasser treats men and women differently. Id., at 80-81.

Plaintiff fails to produce any evidence that the alleged harassment was because of his sex. The entirety of Plaintiff's sexual harassment claim encompasses approximately fifteen interactions between Plaintiff and Weng. Plaintiff alleges that Weng sexually harassed him by saying, with "clear sexual innuendo," that Plaintiff had "nice pants," was "looking good," telling Plaintiff "to pull up his pants in the back," and giving him a 'thumbs-up' sign after asking Plaintiff to stand-up and show his profile. (Strong Depo. 156:10-167:17.) In his deposition, Plaintiff states that he deduced from Weng's comments that Weng was sexually interested in him. (Strong Depo. 159:20-22.) However, Plaintiff also states that he has no information about Weng's sexual orientation (Strong Depo. 165:19-21) and admits that it is possible, in regards to the "nice pants" comment, that Weng was just complimenting him. (Id., at 161:7-9). Weng's declaration states that he may have complimented Plaintiff when he appeared to make an effort in regards to his appearance because he had received reports from other employees that Plaintiff sometimes maintained a sloppy appearance. (Weng Decl. ¶ 17.) In sum, Plaintiff's speculation that Weng might be homosexual is insufficient to establish that Weng's actions were motivated by sexual desire, that is, Plaintiff's sex.

Therefore, because Plaintiff has not presented any evidence to support a claim that any harassment that allegedly took place was "because of" his sex, he is unable to establish a prima facie case as required by Title VII. Nichols, 256 F.3d at 872 (quoting Oncale, 523 U.S. at 79).

### 2. *Impact on Conditions of Employment*

To "alter the conditions of employment" under Title VII, a plaintiff must show that the workplace was permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). "Mere utterance of an epithet which engenders offensive feelings does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile work environment is beyond Title VII's purview." Id. (citing Meritor, 477 U.S. at 67). The Supreme Court cautioned against turning Title VII into a general civility code by stating, "The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace, it forbids only behavior so objectively offensive as to alter the conditions of employment." Onacle, 523 U.S. at 81. The Court must also determine whether the conduct was subjectively and objectively offensive. Harris, 510 U.S. at 21. If either are lacking, the alleged harassing conduct could not have altered the conditions of employment. Id.

Plaintiff's opposition papers state that he was "very disturbed" by Weng's conduct. (Opp. at 3, ¶ 5.) However, Defendant points out that in Plaintiff's deposition, Plaintiff said he was only "a bit uncomfortable" with Weng's conduct. (Strong Depo. at 167:2-5.) For example, at his deposition, Plaintiff was asked, "Did you find these comments offensive?" (Id.) Plaintiff replied, "I'm not easily offended. So it's hard for me to say. But I will say that I was a bit uncomfortable." (Id.)

Being "a bit uncomfortable" does not suggest the kind of repugance, odiousness or even personal displeasure which warrants a finding that Plaintiff found Weng's alleged conduct subjectively offensive. Furthermore, Defendant's motion papers and Plaintiff's own deposition shows that the relationship between Weng and Plaintiff, after Defendant fired him, was "cordial" and that he left on good terms. (Strong Depo. at 128:18-23, 154:1-4, 140:12-25.) Plaintiff has presented no declaration or other evidence suggesting that he found Weng's behavior to be as offensive or disturbing as he claims it to be. Therefore, Plaintiff fails to establish that Weng's conduct was subjectively offensive.

In same-sex (and opposite-sex) harassment cases, courts are required to consider the social context in which the alleged wrongful behavior occurs and is experienced. Onacle, 523 U.S. at 81. A court must consider all the circumstances including the "frequency of the . . . conduct, its severity, whether it is physically threatening or humiliating, or merely an offensive utterance, and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. As such, even if this Court found that Weng's words were flirtatious or demeaning, such language would be insufficient as a matter of law to meet the threshold requirement of words or conduct the "severe or pervasive" standard requires. The "severe or pervasive" standard requires that words or conduct must permeate the workplace with "discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21.

The Court finds that Weng's conduct does not, as a matter of law, rise to the level of severe and pervasive. Plaintiff never alleges Weng's behavior was imbued with ridicule, insult or intimidation, nor does he claim it was physically threatening or humiliating. By Plaintiff's own admission, the behavior was, allegedly, merely imbued with sexual innuendo and made him "slightly uncomfortable." Plaintiff therefore fails to establish the "severe or pervasive" element required of a prima facie claim.

///

///

## IV. CONCLUSION

Plaintiff has failed to present any evidence in support of his claims. Specifically, Plaintiff failed to identify, present evidence, or even assert facts in his racial discrimination claim that show that (1) his job performance was satisfactory, or that (2) similarly situated individuals were treated differently. Plaintiff also failed to present adequate evidence to support his sexual harassment claim demonstrating that Weng's conduct was both subjectively and objectively offensive or so severe and pervasive so as to alter the conditions of his employment. This failure to provide any affidavits, testimony, or discovery to the Court amounts to a failure to challenge Defendant's motion for summary judgment. Fed. R. Civ. P. 56(e), Orr, 285 F.3d at 773. In the absence of such evidence, the Court may properly grant summary judgment in favor of the moving party. See Keenan, 91 F.3d at 1279.

For the reasons given above, Defendant's Motion to for Summary Judgment is GRANTED on all claims. The Clerk of the Court is directed to CLOSE the case file and any pending matters related to it.

IT IS SO ORDERED.

Dated: 2/11/10

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

- 12 -

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

REVEREND JEROME STRONG,

    Plaintiff,

 v.

MORGAN STANLEY DEAN WITTER et al,

    Defendant.
                             /

Case Number: CV08-05209 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 16, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jerome Strong
P.O. Box 21013
Piedmont, CA 94620

Dated: February 16, 2010

                                       Richard W. Wieking, Clerk
                                       By: LISA R CLARK, Deputy Clerk